Daniel J. SHEA and Evelyn
Shea, Plaintiffs,

v.

ROAD CARRIERS LOCAL
707 WELFARE FUND,
Defendant.

No. 92 Civ. 8225 (VLB).

United States District Court,
S.D. New York.

April 14, 1993.

Daniel and Evelyn Shea, pro se.

Babette A. Ceccotti, Tamir W. Rosenblaum, Cohen, Weiss & Simon, New York City, for defendant.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

This case illustrates the difficulties confronted by a natural person in navigating

through the reefs of complex legal structures and obtaining equitable treatment without being required to obtain legal counsel to do so. The courts cannot eliminate these problems, which flow from decisions made by those who draft intricate documents which ordinary citizens are expected to understand, frequently an unrealistic assumption.[1]

Daniel Shea is an employee covered by the Road Carriers Local 707 Welfare Fund (the "Fund"), a jointly administered employer—union benefit plan covered by ERISA, 29 U.S.C. §§ 1002 *et seq.* In July 1991 Shea's wife Evelyn suffered an injury from a falling object that struck her foot. Her doctor conducted an arthroscopic examination, billing a fee of $1385. The Fund paid $750, applying an annual maximum for reimbursement for many or most types of foot care under its ERISA plan document as submitted by the defendant Fund (the "plan"), which excludes coverage for:

> 5. foot care in connection with corns, calluses, flat feet, fallen arches, weak feet, chronic foot sprains, or symptomatic complaints of the feet in excess of $750, inclusive of surgery, during a plan year, effective January 1, 1987.

1. Legal complexity of this type has been identified as one of the disadvantages affecting productivity at the international level. See F. Gibney, *Miracle By Design: The Real Reasons Behind Japan's Economic Success* (1982).

2. Shea complains about the Fund's removal of this case pursuant to 28 U.S.C. § 1441 from state court to this court. He makes, however, no express request for remand pursuant to 28 U.S.C. § 1447.

State courts have concurrent jurisdiction over most beneficiary ERISA claims under 29 U.S.C. § 1132(e)(1), as they do over suits under federal statutes generally, pursuant to the Supremacy Clause of Article VI of the Constitution unless Congress has expressly or impliedly created exclusive federal jurisdiction over such federal claims. See generally *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990); *Yellow Freight System v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); *The Federalist* No. 82 (Hamilton).

This court also has jurisdiction under ERISA and 28 U.S.C. § 1331, and removal was authorized by 28 U.S.C. § 1441.

Affidavit of Albert J. Alimena, on behalf of defendant ("Alimena Aff."), Dkt. No. 5, Exh. 2, p. 44.

The medical examination indicated arthroscopic surgery was required. The plan paid a $95 fee for a second opinion which was required for some surgical procedures (not for arthroscopic foot surgery) and which was optional for others. The second opinion confirmed that the arthroscopic surgery was indicated. Surgery involving a bunion and hammertoe condition was performed in August 1991 at a total cost of $7,201. The Fund refused to pay any of this cost, based on paragraph 5 as quoted above. Shea brought an unsuccessful appeal pursuant to the machinery provided by the Fund.

Shea thereafter sued in state court based on the Fund's disclosure document, Exh. 2, p. 21, which provides: "If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court."

■ The Fund removed the state court suit to this court pursuant to 28 U.S.C. § 1441 and moved for summary judgment under Fed.R.Civ.P. 56 on the ground that paragraph 5 of the plan document quoted barred Shea's claim.[2]

The language of the Fund plan document quoted in text (Alimena Aff. Ex. 2, p. 21) does not contain an explicit waiver of removal, as is necessary for such a waiver to be effective. See *McDermott International v. Lloyds Underwriters*, 944 F.2d 1199 (5th Cir.1991). Moreover, remand now would be likely to cause more, rather than less delay. See *Ferrari v. Home Ins. Co.*, 940 F.2d 550 (9th Cir.1991).

Although I decline to remand the case, the Fund's removal of this case suggests that it routinely removes all state court suits against it brought under ERISA to federal court. Under those circumstances, the Fund's failure to accompany its statement that beneficiaries can sue in state court (Alimena Aff. Ex. 2, p. 21) with mention that the Fund can (and seemingly will) remove even small cases to federal court suggests lack of respect for the concept, deeply embedded in ERISA, that beneficiaries should know their rights under plan documents.

The Fund's removal of this case from state court is contrary to a lay person's probable interpretation of its own documents quoted above (Alimena Aff. Ex. 2, p. 21). This is contrary to fairness to the less legally knowledgeable beneficiaries of the Fund. See Proceedings in Honor of Paul R. Hays, 635 F.2d at LXXI (1981); see also N.Y.Gen.Oblig.Law § 5–702 (plain language requirement for consumer contracts).

## II

The Fund's position is set forth in the Alimena affidavit p. 2, ¶ 5 as follows: "'Symptomatic complaints of the feet' includes all complaints of the feet that have ascertainable symptoms."

No description of actual practice or common understanding, no written decision or analysis, and indeed no documentary support of any kind for this assertion is provided. No foot problems without ascertainable symptoms are mentioned or even suggested in the Alimena affidavit or elsewhere in the Fund's papers. No instances are described in which any claims characterized as non-symptomatic have been accepted.

The Fund's position treats most of the language in paragraph 5 as meaningless.[3] If the Fund's interpretation were accepted, the paragraph would be equivalent to one which excluded with far more simplicity:

all foot care in excess of $750 during a plan year, effective January 1, 1987.

■ The Fund's somewhat obtuse proposed construction is unnecessary: the adjective "symptomatic" may without distortion of the balance of paragraph 5 refer to complaints calling for treatments which correct the symptom rather than requiring more extensive upstream intervention through, for example, arthroscopic surgery.

This alternative interpretation gives meaning to every part of paragraph 5. It also makes sense of the inclusion of paragraph 5 in the list of exclusions in the plan. So construed, paragraph 5 places a cap of $750 on what the Fund will pay for treatment of *routine* foot problems, while not imposing such a limitation on more serious conditions such as those requiring arthroscopic surgery.

Interpreting paragraph 5 to make a distinction between routine and nonroutine foot care, rather than effectively limiting *all* foot care charges to $750 annually as would the

Alimena interpretation, is supported by Alimena Aff. Ex. 3, the Fund's statement of partial reimbursement for Mrs. Shea's initial examination. Exhibit 3 shows payment of $750, categorizing the claim as "ROUTINE FOOT CARE."

■ The term "routine" does not occur in paragraph 5. Its use in Exhibit 3 indicates that "routine" is an overall description of the type of reimbursement covered by paragraph 5 and limited to $750. Arthroscopic surgery, which is *not* on the list of specific procedures explicitly covered by paragraph 5, is not a routine foot care procedure. Nor would a cost in excess of $7,000 suggest that routine foot care is involved.

The need for health care cost control, obviously a legitimate objective of ERISA plan fiduciaries, is served by limiting escalation of reimbursement claims for routine services such as treatment of calluses, mentioned as an example in paragraph 5. The Latin maxim *inclusio unius est exclusio alterius* is no longer given the weight it received at one time, see *Cheney Railroad v. ICC*, 902 F.2d 66, 68–69 (D.C.Cir.), *cert. denied* 498 U.S. 985, 111 S.Ct. 519, 112 L.Ed.2d 530 (1990). But it is relevant that procedures of the magnitude of arthroscopic surgery are not mentioned in the examples set forth in paragraph 5, whereas such matters as calluses are.

The Fund stresses the deference accorded to its decisions under language contained in the plan, called for by *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). To interpret language contrary to both its own plain meaning and to what the target audience of nonexperts would be likely to think it would mean, however, is both arbitrary and capricious.

The absence of factual support for the reasonableness of the Fund's decision or interpretation supports an adverse inference

---

While not directly relevant to the issues discussed in part II below, the Fund's treatment of its duty of disclosure to its beneficiaries evidenced by Ex. 2, p. 21 juxtaposed upon the removal here, does not strengthen its credibility in regard to other arguments it makes.

**3.** Treating language, or distinctions in its use in a document as without function is contrary to both common sense and longstanding traditions of legal interpretation which are important to predictability in interpretation of documents. See *Sea Robin Pipeline v. FERC*, 795 F.2d 182, 184 n. 1 (D.C.Cir.1986).

against its position where it would be in a position to furnish more information if favorable to its contentions. See *United States v. Ianniello,* 824 F.2d 203, 207 (2d Cir.1987); *United States v. Brach,* 809 F.Supp. 1128 (S.D.N.Y.1993).

■ Moreover, it is important that documents intended for employees who are not technically trained be comprehensible to them and that disclosure of essential information be provided in a way beneficiaries can understand. See generally *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1040 (2d Cir.1985).

Employees must be able to "ascertain the intended benefits ... and procedures for receiving benefits," *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982), quoted in *Frank v. Colt Industries,* 910 F.2d 90, 97 (3d Cir.1990); see 29 U.S.C. §§ 1022(a) and (b) and 1024(b)(1); *Frank v. Colt Industries,* 910 F.2d 90, 96 n. 3 (3d Cir.1990).

Language in documents provided for employee or beneficiary guidance must give "words their ordinary meaning" as they would be construed by "any reasonable employee," without imposing an arcane interpretation which could be surprising to a lay person relying on the document. Id. at 96. The Fund's interpretation of the language in paragraph 5 violated this requirement.

Accordingly, I deny the Fund's motion for summary judgment.

## III

Beyond my denial of the Fund's motion under Fed.R.Civ.P. 56, the proper remedy for the situation presented here is problematic. The efforts expended on this case are out of proportion to the amount in dispute. Given the lack of foundation for the Fund's position outlined in part II above, it is difficult to understand the magnitude of the counterattack mounted against the $7,000 claim made by this individual employee, unless his claim were representative of a cate-

gory which had significant importance in the aggregate.[4] But the Alimena affidavit provides no hint that the Fund has even considered other cases involving nonroutine foot surgery recommended by an initially examining physician supported by a second opinion; it certainly does not suggest that applications have been made under the Fund's plan which are similar to that of plaintiff, and that they have ever been have been rejected in such a manner that inconsistency might be generated by a contrary resolution as to Shea.

I am instructed by Fed.R.Civ.P. 1, sentence 2 to construe the Federal Rules in such a manner as to seek the "just, speedy and inexpensive determination of every action." The parties are directed to discuss settlement in person, by telephone, or by means of a written offer (or refusal to make an offer) on the part of the Fund.

If this settlement effort is not successful within 20 days of the date of this order in resolving this dispute, a settlement conference will be scheduled at which decisionmakers with full authority will be present. *G. Heileman Brewing Co. v. Joseph Oat Corp.,* 871 F.2d 648 (7th Cir.1989).

If the settlement conference is likewise unsuccessful, an expedited trial will be scheduled.

SO ORDERED.

---

4. See *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985); *Fry v. United States,* 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975); *Polish National Alliance v. NLRB,* 322 U.S. 643 (1944); *NLRB v. Fainblatt,* 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014 (1939); *United States v. Ricciardi,* 357 F.2d 91 (2d Cir.), *cert. denied* 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 840 (1966).