**UNITED STATES of America, Plaintiff,**

v.

**Robert RUSSELL, Defendant.**

**No. 83 CR 114.**

United States District Court,
N.D. Illinois, E.D.

April 25, 1983.

Cynthia L. Giacchetti, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Julius Lucius Echeles, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

### GETZENDANNER, District Judge:

Defendant Robert Russell moves to dismiss the one-count indictment pending against him for failure to allege a crime punishable under the federal arson statute, 18 U.S.C. § 844(i). On the basis of the facts stated in the Government's responsive memorandum (construed as an offer of proof), this motion is denied.

The Government hopes to prove at trial that Russell maliciously attempted to damage or destroy, by means of fire or explosive, a two-unit apartment building situated at 4530 South Union Street in Chicago. The Government further hopes to establish that Russell resides at 11361 South Lawndale in Chicago, and that he owns the property at 4530 South Union for the purpose of renting it to the public. Evidence will ap- parently also be tendered that Russell owns at least three other rental properties, which, in combination with the South Union building, house numerous tenants who together pay the defendant approximately $1,900 a month in rent.

As to the property on South Union Street, the Government plans to show that at the time of the alleged acts, one unit of the building was rented to a family not related to Russell. The rent charged was $225 a month. Apparently, the second unit was unoccupied. Natural gas originating in states other than Illinois was used to heat the premises at the time of the alleged incident.

The pertinent federal statute, 18 U.S.C. § 844(i), seeks to punish "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." The Government contends that by proving the facts outlined above it will have shown that Russell "attempt[ed] to damage or destroy, by means of fire or an explosive, any building . . . used in . . . any activity affecting interstate or foreign commerce." Russell responds that since the subject premises were not used for "commercial" purposes, the necessary connection to interstate commerce cannot be shown.

The jurisdictional portion of the statute relied upon in the indictment plainly obligates the Government to prove three facts: first, that the attempted arson pertained to "any building"; second, that an "activity affecting interstate or foreign commerce" existed; and third, that the subject building was "used in" that activity. The Government's proposed proof addresses each of these factors.

The property at 4530 South Union clearly falls within the "any building" category. Further, the creation of heat from natural gas originating out of state is an "activity affecting interstate or foreign commerce." Such activity, moreover, is one

in which the building at issue was unquestionably "used." The Government's proposed proof thus appears to satisfy the statute's literal terms. *See United States v. Barton,* 647 F.2d 224, 231–32 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981) (approving a jury instruction that "[a] building is used . . . in an activity [a]ffecting interstate commerce . . . if oil or gas moving in interstate commerce is used to heat the building."); *United States v. Zabic,* No. 82 CR 423, slip op. at 3 (N.D.Ill. Feb. 11, 1983) ("the activity of letting 43 units of dwelling space, including the provision of natural gas to each unit . . . is an activity affecting commerce").[1] Much lesser showings have passed muster. *See United States v. Grossman,* 608 F.2d 534 (4th Cir.1979).

The court recognizes that the reasoning espoused above could have very broad application. *But see* note 2, *infra,* and accompanying text. However, the Seventh Circuit has clearly authorized expansive interpretations of the language of § 844(i). *See United States v. Sweet,* 548 F.2d 198, 201 (7th Cir.), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977) (suggesting that the statute reaches the bombing of a tavern selling only home-produced liquor products because such activity reduces the demand for liquor goods sold in interstate commerce). Congress enacted § 844(i)—as well the remaining provisions of Title XI of the Organized Crime Control Act of 1970—"to protect interstate and foreign commerce against interference and interruption by reducing the hazard to persons and property arising from misuse and unsafe or insecure storage of explosive materials." 18 U.S.

C.A. § 841 note. The construction of the statute adopted here furthers this purpose.

Russell cites in response the Second Circuit's holding in *United States v. Mennuti,* 639 F.2d 107 (2d Cir.1981), that the statute "does not apply to private dwellings." *United States v. Barton, supra,* 647 F.2d at 232 n. 8; *accord, United States v. Giordano,* 693 F.2d 245, 250 (2d Cir.1982). The court declines to rule in Russell's favor on the strength of *Mennuti* for several reasons. First, *Mennuti* does not announce the law of this Circuit; *Sweet* does, and, for the reasons given above, the reasoning found in that opinion, to the extent it is relevant at all, supports the Government's position, not Russell's.

■ *Mennuti* must also be read in context. The *Barton* Court's subsequent approval of the jury instruction quoted *supra* clearly shows that the Second Circuit agrees, as a general matter, that a building heated by out of state gas is thereby "used in" an "activity affecting interstate or foreign commerce" for purposes of the statute. *Mennuti* simply carves a "residential building" exception to this general rule. The statute, however, speaks of "any building," not "non-residential buildings." It should go without saying that the words of the statute must, if at all possible, be given their ordinary meaning. *See, e.g., United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *see also United States v. Fears,* 450 F.Supp. 249, 253 (E.D. Tenn.1978) (the term "any building" in 18 U.S.C. § 844(e) means *any* building, including a personal residence) (emphasis in original).

It is acknowledged that the House report underlying § 844(i), though ambiguous, can

---

1. Thus, defendant's reliance upon *United States v. Monholland,* 607 F.2d 1311 (10th Cir.1979), is misplaced. In *Monholland,* the Court refused to find that § 844(i) criminalized the bombing of a pick-up truck driven to work by a state court judge. The Government argued that the judge's business activities affected interstate commerce, and that he "used" his truck in his work routine. The Court was not persuaded:

> We say, then, that the truck is wholly immaterial as far as any commerce is concerned even if we assume that there is a commerce

quality about what the judge does after he gets to court. . . . Since [the truck] is divorced from the activity carried on in court, there is no legal relationship whereby one can say that the truck affects commerce. . . . Our view has to be that, in law, the activity of the judge at the courthouse is remote from the use of the truck.

*Id.* at 1316. In this case, by contrast, it can hardly be said that the building in question is "divorced" or "remote" from the activities affecting interstate commerce.

**1088**

be read to limit the statute's reach to "business property":

> Section 844(i) proscribes the malicious damaging or destroying, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce. Attempts would also be covered. Since the term affecting [interstate or foreign] "commerce" represents "the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause," *NLRB v. Reliance Fuel Corp.,* 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963), this is a very broad provision covering substantially all business property.

H.R.Rep. 91–1549, 91st Cong., 2d Sess. *reprinted in* [1970] U.S.Code Cong. & Admin. News 4007, 4046. But even conceding the propriety of the suggested limitation,[2] Russell's case is not advanced. For if the Government's proposed proof materializes, the evidence will show that Russell utilized the subject property in conducting his "side" business[3] of providing housing space for rent. From the perspective of the defendant, the building on South Union Street was very definitely "business property" within the meaning of the House Report cited above.[4]

For all the reasons stated, defendant's motion to dismiss the indictment is denied.

It is so ordered.

---

**2.** It should be stressed that the court's "concession" is made solely for purposes of discussion. The House Report's specific mention of "business property" does not necessarily carry with it the negative pregnant that all other property falls beyond the statute's reach. Indeed, evidence that such an inference should not be drawn is found in the immediately preceding statement in the Report that Congress meant to exercise its full power under the commerce clause. But in light of the precise facts presented herein, there is no need for the court to pursue this line of thought to its furthest reach. The court expresses no opinion as to whether § 844(i) criminalizes the bombing of an *owner-occupied* dwelling heated by out of state gas.

**3.** According to the Government's brief, "[t]he defendant is a 17 year veteran of the Chicago Fire Department."

**4.** The court recognizes that one of the buildings bombed in *Mennuti* was held out for rent, and that this factor was deemed irrelevant. With respect, this court does not find the reasoning of either the District Court (487 F.Supp. 539 at 544 n. 7) or the Court of Appeals (639 F.2d at 110) in *Mennuti* persuasive on this point.