## RUSSELL *v.* UNITED STATES

No. 84–435. Argued April 24, 1985—Decided June 3, 1985

STEVENS, J., delivered the opinion for a unanimous Court.

*Julius Lucius Echeles* argued the cause for petitioner. With him on the briefs was *Frederick F. Cohn.*

*Christopher J. Wright* argued the cause *pro hac vice* for the United States. With him on the brief were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Wallace,* and *Thomas E. Booth.*

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether 18 U. S. C. § 844(i) applies to a two-unit apartment building that is used as rental property.

Petitioner owns an apartment building located at 4530 South Union, Chicago, Illinois. He earned rental income from it and treated it as business property for tax purposes. In early 1983, he made an unsuccessful attempt to set fire to the building[1] and was consequently indicted for violating § 844(i). Following a bench trial, petitioner was convicted and sentenced to 10 years' imprisonment. The District Court[2] and the Court of Appeals[3] both rejected his contention that the building was not commercial or business property, and therefore was not capable of being the subject of an offense under § 844(i).

Section 844(i) uses broad language to define the offense. It provides:

> "Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both. . . ."

The reference to "any building . . . used . . . in any activity affecting interstate or foreign commerce" expresses an intent by Congress to exercise its full power under the Commerce Clause.[4]

---

[1] Petitioner hired Ralph Branch, a convicted felon, to start a fire in the building by using a natural gas line in the basement. Branch attempted to start a fire by lighting a potato-chip bag and a piece of wood, but was unsuccessful in torching the building. 1 Tr. 35–39. Petitioner asked Branch to make a second attempt; however, Branch reported the events to the Federal Bureau of Investigation and consented to tape-record a conversation with petitioner. After the conversation, petitioner was arrested. The fire was never set. *Id.*, at 41–50.

[2] 563 F. Supp. 1085 (ND Ill., ED 1983).

[3] 738 F. 2d 825 (CA7 1984).

[4] See *Scarborough* v. *United States*, 431 U. S. 563, 571 (1977), in which the Court stated:

"As we have previously observed, Congress is aware of the 'distinction between legislation limited to activities "in commerce" and an assertion of its

The legislative history indicates that Congress intended to exercise its full power to protect "business property."[5] Moreover, after considering whether the bill as originally introduced would cover bombings of police stations or churches,[6] the bill was revised to eliminate the words "for

---

full Commerce Clause power so as to cover all activity substantially affecting interstate commerce.' *United States* v. *American Bldg. Maintenance Industries*, 422 U. S. 271, 280 (1975); see also *NLRB* v. *Reliance Fuel Corp.*, 371 U. S. 224, 226 (1963)."

[5] Section 844(i) was passed as part of Title XI of the Organized Crime Control Act of 1970. 84 Stat. 922, 952. The section originated because of the need "to curb the use, transportation, and possession of explosives." Hearings on H. R. 17154, H. R. 16699, H. R. 18573 and Related Proposals before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess., 1 (1970) (hereinafter Hearings). After hearings before a House Subcommittee, Title XI emerged from two bills, H. R. 18573 and H. R. 16699, 91st Cong., 2d Sess., that Representative McCullough introduced in the House of Representatives and that were referred to the House Committee on the Judiciary. 116 Cong. Rec. 35198 (1970) (statement of Rep. McCullough). H. R. 16699 stated, in pertinent part:

"(f) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used *for business purposes* by a person engaged in commerce or in any activity affecting commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both. . . ." Hearings, at 30 (emphasis added).

During the hearings there were several discussions and statements on the reach of subsection (f) of H. R. 16699. Will R. Wilson, Assistant Attorney General, Criminal Division, Department of Justice, stated early in the hearings:

"[W]e have added a new provision (subsection (f)) covering malicious damage or destruction by means of an explosive of any property used for business purposes by a person engaged in commerce or in any activity affecting commerce. . . . Since the term 'affecting commerce' embraces 'the fullest jurisdictional breadth constitutionally permissible under the commerce clause,' *NLRB* v. *Reliance Fuel Corp.*, 371 U. S. 224, 226 (1963), subsection (f) would cover damage by explosives to substantially any business property." *Id.*, at 37.

[6] Shortly after Assistant Attorney General Wilson made the comment quoted in n. 5, *supra*, Representative Rodino of New Jersey engaged in the following colloquy with Wilson:

business purposes" from the description of covered property.[7]  Even after that change, however, the final Report on the bill emphasized the "very broad" coverage of "substantially all business property."[8]  In the floor debates on the final bill, although it was recognized that the coverage of the bill was extremely broad, the Committee Chairman, Representative Celler, expressed the opinion that "the mere bombing of a private home even under this bill would not be

---

"Mr. RODINO.  That is the problem.

"Mr. Wilson, subsection (f) of section 837, as proposed by H. R. 16699, applies to structures used 'for business purposes.'  I am a little bit in the dark.  Would this section and these words cover the bombings of police stations? . . . Just what would new section 837(f) cover?

"Mr. WILSON.  I don't believe it would cover either public buildings or private homes under normal use, but what this is designed for is the business office, where the business is interstate commerce, giving the Federal Government a basis for jurisdiction.  It is to broaden the thing, to get at such things as the bombing of business offices in New York City, where the business is in interstate commerce.

"Mr. RODINO.  Would it apply to the bombings of churches, synagogues, or religious edifices?

"Mr. WILSON.  I don't think so."  Hearings, at 56.

[7] See *id.*, at 300:

"The CHAIRMAN.  The question is whether you want to broaden it to cover a private dwelling or a church or other property not used in business.

"Mr. WYLIE.  As far as I am concerned we could leave out the words 'for business purposes,' and it would help the situation. . . ."

The phrase "for business purposes" was not included when the House Committee on the Judiciary amended S. 30 and those words were omitted from the statute as finally enacted.

[8] The Report stated in pertinent part:

"Section 844(i) proscribes the malicious damaging or destroying, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.  Attempts would also be covered.  Since the term affecting [interstate or foreign] 'commerce' represents 'the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause,' *NLRB* v. *Reliance Fuel Corp.*, 371 U. S. 224, 226 (1963), this is a very broad provision covering substantially all business property."  H. R. Rep. No. 91-1549, pp. 69-70 (1970).

covered because of the question whether the Congress would have the authority under the Constitution."[9] In sum, the legislative history suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home.

By its terms, however, the statute only applies to property that is "used" in an "activity" that affects commerce. The rental of real estate is unquestionably such an activity. We need not rely on the connection between the market for residential units and "the interstate movement of people,"[10] to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties. The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class.[11]

Petitioner was renting his apartment building to tenants at the time he attempted to destroy it by fire. The property was therefore being used in an activity affecting commerce within the meaning of § 844(i).

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[9] See 116 Cong. Rec. 35359 (1970); see also *id.*, at 35198 ("[T]he committee extended the provision protecting interstate and foreign commerce from the malicious use of explosives to the full extent of our constitutional powers") (statement of Rep. McCullough); *id.*, at 37187 ("The reach of the law . . . is greatly extended by making it unlawful to damage or destroy property which is used in or affects interstate commerce. Nearly all types of property will now be protected by the Federal law") (statement of Rep. MacGregor).

[10] See *McLain* v. *Real Estate Board of New Orleans*, 444 U. S. 232, 245 (1980).

[11] See *Perez* v. *United States*, 402 U. S. 146, 153–154 (1971).