**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Valentine Rodriguez–Solel BOTELLO
aka Jose M. Pagan, Defendant–
Appellant.**

No. 94-30339.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1995.

Decided Nov. 21, 1995.

Retta–Rae Randall and Kevin F. McCoy, Assistant Federal Public Defenders, Anchorage, Alaska, for defendant-appellant.

William C. Brown, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Valentine Rodriguez–Solel Botello appeals his conviction for communicating false information that a product was tampered with in violation of 18 U.S.C. § 1365(c). He disputes a jury instruction regarding the interstate commerce element of subsection 1365(c). Jurisdiction lay in the district court under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

In June 1993 rumors circulated amongst the public in Anchorage that cans of Pepsi contained hypodermic needles. Pepsi sales consequently dropped by half. It was during this period, on June 14, that Botello bought some Pepsi at a local shop. Shortly after making his purchase, he returned to the shop with the complaint that one of his Pepsis contained a hypodermic needle. He recounted his story to the other customers in the store and to an investigator called in from the Food and Drug Administration (FDA). He admonished Pepsi's representative on the scene, saying he "couldn't believe that [Pepsi] would put a needle in a can and poke my daughter's lip." In response to Botello's allegation, Pepsi, with the involvement of the FDA, undertook an extensive investigation in Anchorage and in the Seattle facilities from which Alaska's Pepsis are shipped.

The story turned out to be a hoax. Botello, who is diabetic, had put an insulin needle

in the can after he opened it. He was convicted under the authority of a broad federal law aimed at product tampering, 18 U.S.C. § 1365(c). From this conviction he appeals.

■ The issue Botello raises is whether the district court correctly instructed the jury regarding the interstate commerce element of section 1365(c). Because Botello failed to object at trial, we review the adequacy of this instruction for plain error. *United States v. Bustillo*, 789 F.2d 1364, 1367 (9th Cir.1986). Relief for plain error requires the appellant to show a highly prejudicial error affecting substantial rights. *See United States v. Paul*, 37 F.3d 496, 500 (9th Cir.1994).

## II

■ Section 1365 expresses Congress' concern with the intentional tainting of widely distributed, so-called "consumer" products. Botello was convicted under section 1365(c), which punishes those who knowingly communicate false information that a consumer product has been tainted whenever the "product or the results of such communication affect [sic] interstate or foreign commerce." 18 U.S.C. § 1365(c)(1).[1] The district court read this element disjunctively, and we agree that it is satisfied when the government proves that *either* the product itself *or* the communication about the product affected interstate commerce.

■ Botello objects to the jury instruction regarding the interstate commerce element. The court told the jury that the element would be satisfied by a product that *"previously traveled"* in interstate commerce.[2]

---

1. 18 U.S.C. § 1365(c) reads in full:

    (1) Whoever knowingly communicates false information that a consumer product has been tainted, if such product or the results of such communication affect interstate or foreign commerce, and if such tainting, had it occurred, would create a risk of death or bodily injury to another person, shall be fined not more than $25,000 or imprisoned not more than five years, or both.

    (2) As used in paragraph (1) of this subsection, the term "communicates false information" means communicates information that is false and that the communicator knows is false, under circumstances in which the infor-

mation may reasonably be expected to be believed.

2. The challenged jury instruction reads as follows:

    Interstate commerce means trade, or business, or travel between or among the states. As used in Title 18, United States Code, Section 1365, the phrase "affected interstate commerce" means, in any manner or to any degree, to move, or to travel, or to be involved in the movement, transportation or flow of a consumer product in commerce between or among different states. It is not necessary for the government to prove that the defendant knew or intended that a consumer product was

This instruction is not plainly erroneous. Elsewhere in Title 18 Congress used the language "affecting interstate commerce" to capture not only commodities that are presently in the stream of commerce, but also items that were previously shipped interstate. Thus in *United States v. Sherbondy*, 865 F.2d 996, 999–1001 (9th Cir.1988), we held that a charge of possession of a firearm "in or affecting commerce" under 18 U.S.C. § 922(g) required no contemporaneous connection between the firearm and interstate commerce; proof that the firearm had at some point in the past traveled interstate was sufficient. Congress deploys this language in full knowledge of its breadth of meaning in our decisions. As the Supreme Court recently observed in *Allied–Bruce Terminix Companies v. Dobson*, —— U.S. ——, ——, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995) (citing *Russell v. United States*, 471 U.S. 858, 859, 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985)), "[t]hat phrase—'affecting commerce'—normally signals a congressional intent to exercise its Commerce Clause powers to the full."

Botello argues that a false allegation of product tampering is actionable under § 1365(c) only if the product is in interstate commerce when the fraudulent statement is made. He cites *United States v. Levine*, 41 F.3d 607 (10th Cir.1994), for this proposition. In *Levine*, however, the court addressed the interstate commerce element of 18 U.S.C. § 1365(b), which prohibits actual tampering. In the actual tampering context it may make sense to require that the tainting take place while the product is still in interstate commerce as a way to distinguish product tampering from a variety of state law offenses that arise from the same sort of conduct. The distinction is important because Congress did not intend section 1365 to subsume state laws of assault, mayhem, battery or murder. We need not express a view of

*Levine* here, however, because it addresses an issue not before us.

As the facts of this case bear out, an accuser can significantly disrupt interstate commerce by making a false claim about a product he has already bought. A statement about one can of Pepsi implicates all other cans like it. Botello's statement helped to cast further into doubt the safety of, at least, all the Pepsi from Seattle. He instigated a brouhaha that put Pepsi and the FDA to great expense. Evidence before the jury permitted it to conclude that Botello's false report affected interstate commerce by damaging the reputation of Pepsi soft drinks in Alaska, and by requiring Pepsi to fly staff people back and forth between Washington and Alaska to investigate Botello's Pepsi can. By instructing the jury to determine whether the Pepsi in question previously traveled in interstate commerce, the district court permitted section 1365(c) to reach Congress' intended goal.

### III

We find no plain error in the district court's instruction to the jury. The interstate commerce element of 18 U.S.C. § 1365(c) is satisfied by a finding that the product about which a false claim of tainting is made has previously traveled in interstate commerce.

**AFFIRMED.**

affecting interstate commerce. The government must prove beyond a reasonable doubt, however, that the information communicated was about a consumer product that did, in fact, "affect" interstate commerce.

The government may meet its burden with respect to this element by proving a connection between interstate commerce and the consumer product described in the indictment. It is

not necessary for the government to prove the defendant knew that the consumer product or its components had previously traveled in interstate commerce. *The government would meet its burden, however, if it established beyond a reasonable doubt that the product itself, or its components, had previously traveled in interstate commerce.*

(Emphasis added).