**UNITED STATES of America**

v.

**Joseph CORONA, III, et al.**

**Criminal Action No. 95–0219.**

United States District Court,
E.D. Louisiana.

March 5, 1996.

Veronica Angela Collins, Federal Public Defender, New Orleans, LA, for Joseph Corona, III.

Valerian J. Stock, Slidell, LA, Pro Se.

Lindsey McDonald, Amite, LA, Pro Se.

John T. Mulvehill, Federal Public Defender, New Orleans, LA, David Frederick Craig, Jr., David F. Craig, Jr., New Orleans, LA, Hans P. Sinha, Hans P. Sinha, Attorney at Law, New Orleans, LA, for Lindsey McDonald.

Michele A. Horn, U.S. Attorney's Office, New Orleans, LA, for U.S.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is the defendants Joseph Corona, III and Lindsey McDonald's motion for judgment of acquittal or, in the alternative, motion for new trial. Oral arguments were heard on this motion on January 24, 1996 and taken under submission on that date. For the following reasons, the defendants' motion is DENIED.

## BACKGROUND

This is an arson case. The defendants, Joseph Corona III and Lindsey McDonald, were charged and convicted of conspiring to burn Corona's mother's building on Polymnia Street in New Orleans, along with a building next door, located on Carondelet Street, in violation of 18 U.S.C. § 371, § 844(h), and § 844(i). The property owned by Mrs. Corona was zoned for residential use only but was being renovated by defendant Corona at the time of the fire for use as rental property. Defendant McDonald was a friend of Joseph Corona who helped in the renovation of the Polymnia Street property.

Defendant Corona convinced Stock, a defendant not before this Court, and McDonald to set fire to the building on Polymnia Street. On Feb. 6, 1995 around 2:00 a.m., it was reported that the building on Polymnia Street was on fire. A large blaze ensued and destroyed both the Polymnia Street house and building next door on Carondelet Street.

During a four day trial on the merits, evidence was presented which showed, inter alia, that defendant Corona had previously tried to convince others to set fire to the house; that McDonald and Stock were at the scene directly before the blaze moving a mattress to a lower floor in the building; that arson was the most likely cause of the conflagration and that the above mentioned mattress was a point of origin for the fire. Defendant Lindsey McDonald took the stand and attested to his naivete and his innocence; the jury rejected his testimony. The jury

found both Corona and McDonald guilty on all three counts.

The defendants were convicted under a federal statute which makes it a federal crime to destroy by means of fire "property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." 18 U.S.C. § 844(i) (the defendants convictions on Counts 1 and 3 simply relate back to § 844(i) so only that statute needs to be addressed by this Court). In its simplest terms, this statute makes the crime of arson, traditionally a matter for state courts, a federal crime by using the commerce clause.

■■ The defendants attack the constitutionality of this statute and this Court's subject matter jurisdiction to hear this case in light of *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez,* the Supreme Court held the Gun Free School Zone Act unconstitutional on the grounds that this act exceeded Congress' Commerce Clause authority. The defendants have filed a motion for judgment of acquittal under Rule 29. *See* Fed.R.Crim.P. 29. The Court reviews this motion by considering all the evidence in a light most favorable to the verdict in this case. *See United States v. Triplett,* 922 F.2d 1174, 1177 (5th Cir.), *cert. denied,* 500 U.S. 945, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991).

### *ANALYSIS*

■■ "Federal jurisdiction" is the power of a federal court to hear a case, to apply the law, and to render judgment. All federal jurisdiction has its origin in the United States Constitution. *See* U.S. Const. art. III. The Constitution empowers federal courts to adjudicate all cases, civil, criminal, and maritime, arising under the Constitution, the laws of the United States, and treaties. U.S. Const. art. III, § 2. Because the laws of the United States do not include either civil or criminal common law, federal criminal jurisdiction is limited to cases involving activities specifically made criminal by either the Constitution or Congress. Thomas J. Egan, Note, *The Jurisdictional Element of 18 U.S.C. § 844(1), A Federal Criminal Com-*

*merce Clause Statute,* 48 Wash.U.J.Urb. & Contemp L. 183 (1995).

The Constitution itself enumerates only a limited number of criminal activities: counterfeiting, U.S. Const. art. I, § 8, cl. 6; piracy on the high seas, U.S. Const. art. I, § 8, cl. 10; treason, U.S. Const. art. III, § 3, cl. 2; offenses against the law of nations, U.S. Const. art. III, cl. 6; and, impeachment, U.S. Const. art. I, § 3, cls. 6 and 7. All other federal crimes are creations of Congress.

The justification for federal criminal law flows from three federal responsibilities: protecting uniquely federal interests, supplanting local law enforcement when state authorities are unwilling or unable to provide protection, and ensuring adherence to federal administrative regulations. *See* Lafave & Scott, *Criminal Law,* § 2.8(c) at 124 (2d 1986). To fulfill these responsibilities, Congress can pass criminal laws under one of the specifically enumerated powers, such as the Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18; the War Powers Clause, U.S. Const. art. I, § 8, cl. 11; and, the Commerce Clause, U.S. Const. art. I, § 8, cl. 3. Thomas J. Egan, *supra.*

As with the statute involved in this action, Congress has often invoked the commerce power to federalize criminal activity. The scope of the Commerce Clause has evolved over time. This evolution, from *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824) to *U.S. v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), has reflected the Court's changing views on federalism. *See also NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937) and *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

The present position of the Court, as illustrated in *United States v. Lopez,* is to restrictively interpret the Commerce Clause when it is used as a foundation for a criminal statute. *See* Larry E. Gee, Comment, *Federalism Revisited: The Supreme Court Resurrects the Notion of Enumerated Powers by Limiting Congress' Attempt to Federalize Crime,* 27 St. Mary's L.J. 151 (1995). *Lopez* dealt with the Gun–Free School Zone Act which made it a federal offense to knowingly possess a firearm at a place that the individu-

al knows or has reasonable cause to believe is a school zone. The *Lopez* court held that this act exceeded Congress' commerce clause authority, and concluded that the act was unconstitutional. The court went on to define the three categories of activity which Congress may regulate under the Commerce Clause:

1) the use of the channels of interstate commerce;

2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and

3) activities which have a substantial relation to interstate commerce ... those activities that substantially affect interstate commerce. *Lopez*, —— U.S. at ——– ——, 115 S.Ct. at 1629–30.

At trial, the government presented evidence that the property on Polymnia Street was being renovated at the time of the fire for use in the future as rental property or a youth hostel. This renovation involved the use of numerous items which had traveled in interstate commerce. The property on Carondelet Street was being used in part by its owner a self-employed United Cab driver, Mario Greco, for storage of his cabs and in part by a cab company as a meeting or recreational site for its members. Therefore, both buildings were being used or being prepared for use as rental property at the time of the fire.

The determinative issue is whether rental property fits within one of the three categories of activity mentioned in *Lopez*. The seminal case on this point is *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985). *Russell* involved the attempted destruction by fire of a two-unit apartment building used by the defendant as rental property. The Court in *Russell* began its analysis by finding that it was the intent of Congress in enacting § 844(i) to exercise the full extent of its power under the Commerce Clause to protect business property. *Id.* at 860–62, 105 S.Ct. at 2456–58.[1] The

*Russell* court held that rental property is "unquestionably" a business activity affecting interstate commerce. *Id.* at 862, 105 S.Ct. at 2457–58. Therefore, Congress, according to *Russell*, may regulate the destruction of rental property under the Commerce Clause.

The Fifth Circuit took *Russell* a step further in *United States v. Patterson*, 792 F.2d 531 (5th Cir.1986). *Patterson* involved the destruction of three partially completed buildings that were part of a residential condominium project. *See also United States v. Andrini*, 685 F.2d 1094 (9th Cir.1982) (concerning an office building under construction and destroyed by fire). The buildings in *Patterson* were vacant, under construction and not yet being used as rental property. Nevertheless, the Fifth Circuit held that the incomplete buildings were "used" within the meaning of § 844(i) since the property had a relationship to activity affecting interstate commerce. *Id.* at 534.

This Court in the present case instructed the jury that the defendants could only be found guilty of 18 U.S.C. § 844(i) if they found beyond a reasonable doubt three essential elements, the third of which was, "that the buildings were being used in interstate commerce or in an activity substantially affecting interstate commerce." Jury Instructions, Page 13–14; *See United States v. Pappadopoulos*, 64 F.3d 522 (9th Cir.1995). The jury found the buildings which were burned were being used in interstate commerce or in an activity which substantially affected interstate commerce.

## CONCLUSION

■ After a considering, *Russell v. United States, United States v. Patterson*, and *United States v. Pappadopoulos*, the Court in this case held the government to the a higher standard with regard to the jurisdictional element of 18 U.S.C. § 844(i) in light of *United States v. Lopez*. After a trial on the merits, a jury found that the buildings at issue were being used in interstate commerce or in an activity which substantially affected interstate commerce. After viewing the evi-

---

**1.** Footnotes 5–9 of *Russell v. United States* contain a comprehensive view of the legislative history surrounding § 844(i).

dence presented and all inferences that may reasonably be drawn from it in the light most favorable to the verdict, this Court holds that a reasonable-minded jury could have found that the government proved every element of the crime beyond a reasonable doubt. *See United States v. Triplett,* 922 F.2d 1174, 1177 (5th Cir.), *cert. denied,* 500 U.S. 945, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991). Based upon this finding, the Court holds that the jurisdictional requirements in this case are met.

For the foregoing reasons, the defendants' motion for a judgment of acquittal or, in the alternative, motion for new trial is DENIED.