**F I L E D**

**UNITED STATES COURT OF APPEALS**

**DEC 11 1997**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT ALLEN LITTLE, JR.,

    Defendant - Appellant.

No. 96-4136
(D. Ct. No. 95-CR-149)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before TACHA, BRISCOE, and LUCERO, Circuit Judges.

    Defendant Robert Allen Little, Jr. was convicted of violating federal law

for bombing a dormitory at Dixie College in St. George, Utah in October of 1993.

He raises four issues on appeal. We exercise jurisdiction under 28 U.S.C. § 1291

and affirm.

I.    BACKGROUND

    Robert Allen Little, Jr. moved to St. George, Utah in the summer of 1993.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

There, he associated with members of a skinhead organization and engaged in activities manifesting a hatred for Jews and African-Americans. During late September or early October, 1993, on at least two separate occasions, Mr. Little told acquaintances that he was going to cause a bomb to explode. On one of these occasions, he specified that the bomb would explode at a local college dormitory. On October 10, 1993, a homemade pipe bomb exploded outside a dormitory room occupied by two black students who attended Dixie College. The explosion damaged the building extensively and destroyed the property of the two students. The bomb had "KKK" written on it.

On the day of the bombing, Mr. Little's roommate, Jennifer Price, had seen Mr. Little build a pipe bomb and cause a small explosion to test the device. Mr. Little told Ms. Price that he was "going to get some niggers." Tr. 326. That same night, when Ms. Price returned with a friend, Mr. Little told them that he had just "got some niggers" by setting off a bomb at a college dormitory. Tr. 328. He also said that he had left a note on another student's door.

The morning after the bombing, a different black student found a note at his door that read, "All niggers ought to die," had "KKK" written on it, and had drawings of swastikas and a man hanging from a tree. Tr. 252-54. The student transferred from the college because of the bombing and the note. The night after the bombing, Mr. Little told three acquaintances that he was responsible for the

bombing and commented that had the two black students been killed, he would not have committed murder because blacks are "subhuman." Tr. 454. He also told them that he was "going down to the college" to "shoot all the niggers." Tr. 455, 470. Immediately after this conversation, two of the acquaintances reported what Mr. Little had said to the police. The next day, the police searched Mr. Little's apartment. They found a PVC pipe, 53 fuses, and lead fragments similar to those found at the scene of the explosion. During the search, Mr. Little ran from the apartment and fled the state. Mr. Little was sixteen years old at the time of the bombing.

During the summer of 1995, Mr. Little surrendered himself to a juvenile facility in California and was serving a sentence there when the United States initiated this action. His jail term in California relates to his involvement in the firebombing of the house of an African-American family on February 14, 1993, several months before he moved to Utah and the bombing of the Dixie College dormitory.

On August 23, 1995, the United States filed a four-count sealed information under 18 U.S.C. § 5032 charging Mr. Little with acts of juvenile delinquency. A federal grand jury charged Mr. Little with a violation of 18 U.S.C. § 844(i) (malicious damage and destruction by fire and explosive), a violation of 26 U.S.C. § 5861(d) (possession of an unregistered firearm), and two violations of 42

U.S.C. § 3631(a) (interference with housing rights of person on the basis of race).

The government filed a certification under § 5032, asserting that the federal district court had jurisdiction over Mr. Little because he was a juvenile at the time of the alleged offenses, he was charged with a felonious crime of violence in which the government had a substantial interest, and local authorities had refused to prosecute Mr. Little. The government evidenced the local authorities' refusal by attaching a letter from the county attorney stating that the local courts would not assume jurisdiction over the case.

The government also filed a motion under § 5032, requesting that the district court proceed against Mr. Little as an adult because he was charged with violent crimes involving the attempted use of physical force and because he had been found guilty of committing violent crimes in the past. The district court granted this motion and proceeded against Mr. Little as an adult.

At trial, the government introduced the above-recounted evidence, including Mr. Little's involvement in the firebombing of the house in California eight months before the dormitory bombing. The government also introduced evidence that 10 percent of the Dixie College student body were out-of-state residents who paid rent to live in the school's dormitories, approximately 25 percent of the school's educational materials came from out-of-state, and that a large amount of its electricity and power were furnished by out-of-state sources.

Mr. Little testified at trial and denied all involvement in the Dixie College bombing. He testified that he never told anyone that he was responsible for the bombing. He did admit that he was responsible for the firebombing in California, but he contended that he committed that crime because of a dispute over a bicycle and not because of the victims' race.

On May 13, 1996, a jury found Mr. Little guilty of all counts. On July 22, 1996, the district court sentenced Mr. Little to twelve years in prison, fined him $12,000, and ordered him to pay $190 in restitution.

II.    DISCUSSION

Mr. Little raises four issues on appeal. He asserts that (1) under 18 U.S.C. § 5032, federal jurisdiction was improper and he should not have been charged as an adult, (2) 18 U.S.C. § 844(i) is unconstitutional under the rule of United States v. Lopez, 115 S. Ct. 1624 (1995), (3) the district court abused its discretion by granting the government's motion in limine to limit cross-examination of a government witness, and (4) the evidence presented by the government at trial was not sufficient to sustain a conviction.

We first turn to the question whether, under 18 U.S.C. § 5032, the district court properly exercised jurisdiction over Mr. Little and whether he was properly charged as an adult. We review questions of statutory interpretation de novo. See United States v. Angelo D, 88 F.3d 856, 859 (10th Cir. 1996). Section 5032

addresses two issues relevant to this case: the requirements for certification of federal jurisdiction over a juvenile and mandatory transfer to adult status.

A federal district court may only exercise jurisdiction over a juvenile if the Attorney General certifies to the court that (1) the local state court does not have or refuses to exercise jurisdiction over the case, (2) the state does not have adequate programs and services to meet the needs of juveniles, or (3) the offense charged is a felony crime of violence in which the United States has a substantial federal interest. See 18 U.S.C. § 5032. For there to be a proper exercise of federal jurisdiction, the Attorney General only needs to certify to one of these three. We conclude that the district court properly exercised federal jurisdiction over Mr. Little under the first option because the government certified to the federal district court that the local state court in Utah refused to assume jurisdiction over the case and evidenced that certification by a letter from the county attorney stating that he would not prosecute the case.

Mr. Little also contends that the district court should not have transferred him to adult status under § 5032. We disagree. Section 5032 *requires* a federal district court to transfer the juvenile defendant to adult status if (1) the juvenile was at least 16 years old when the criminal act was alleged to have occurred, (2) the alleged act would be, if committed by an adult, a felony that has as an element the use or attempted use of physical force against another person, and (3) the

juvenile has previously been found guilty of an act that would be, if committed by an adult, a felony that has as an element the use or attempted use of physical force against another person. See 18 U.S.C. § 5032. Mr. Little was 16 years old at the time of the Dixie College bombing; the alleged crime involved the attempted use of physical force against another person; and he was previously found guilty of firebombing the house in California, an act which involved the attempted use of physical force against another person. The district court was required to transfer Mr. Little to adult status because all three of the statutory conditions existed. See 18 U.S.C. § 5032 ("[A] juvenile . . . *shall* be transferred . . . for criminal prosecution.") (emphasis added).

We next address the constitutionality of 18 U.S.C. § 844(i) in light of United States v. Lopez, 115 S. Ct. 1624 (1995), a question that we review de novo. See United States v. 829 Calle de Madero Chaparral, 100 F.3d 734, 736 (10th Cir. 1996). Mr. Little argues that § 844(i) is unconstitutional as applied in this case. Section 844(i) provides, in relevant part:

> Whoever maliciously damages or destroys . . . , by means of fire or an explosive, any building . . . *used in interstate or foreign commerce or in any activity affecting interstate foreign commerce* shall be imprisoned for not more than 10 years or fined not more than $10,000, or both . . . .

18 U.S.C. § 844(i). The Supreme Court held, ten years before its decision in Lopez, that § 844(i) is an exercise by Congress of its full power under the

Commerce Clause. See Russell v. United States, 471 U.S. 858, 859 (1985). In Lopez, the Supreme Court held that Congress had exceeded its authority under the Commerce Clause when it enacted the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A). That statute made possession of a firearm in a school zone a federal crime. The Court held that the statute had "nothing to do with 'commerce' or any sort of economic enterprise," nor did it require the firearm possession to be connected in any manner to interstate commerce. Lopez, 115 S. Ct. at 1630-31. Lopez does not change the Court's conclusion in Russell because the statute under consideration here, unlike the one at issue in Lopez, contains a "jurisdictional element which . . . ensure[s], through case-by-case inquiry, that the [arson] in question affects interstate commerce." Lopez, 115 S. Ct. at 1631.

Mr. Little asserts that the jurisdictional element cannot be established in this case because, as a matter of law, the Dixie College dormitory cannot be considered a "building . . . used in interstate . . . commerce." 18 U.S.C. § 844(i). Because Congress sought to exercise its full Constitutional power in § 844(i), see Russell, 471 U.S. at 860, the question that we must answer is whether Congress would have the authority under the Commerce Clause to prohibit the destruction of the Dixie College dormitory. See United States v. Pappadopoulos, 64 F.3d 522, 525 (9th Cir. 1995) (asking the same question as to the destruction of a private residence). The Court's disposition in Russell controls here. In Russell,

the Court addressed whether § 844(i) applies to a two-unit apartment building that is used as rental property.  See Russell, 471 U.S. at 858.  The Court concluded:

> [T]he local rental of an apartment unit is merely an element of a much broader commercial market in rental properties.  The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class.

Id. at 862.  In this case, the government presented evidence that Dixie College collected rent from students living in the dormitory that Mr. Little bombed.  Indeed, some of the students living in the dormitory were out-of-state residents.  Because the dormitory was rental property, there is no question that Congress would have the authority under its commerce power to prohibit its destruction.  Therefore, § 844(i) was constitutionally applied in this case.

Mr. Little next asserts that the district court erred by denying him the right to cross-examine Ms. Price, his roommate at the time of the bombing, regarding her past psychiatric treatment.  Review of a trial court's decision to limit cross-examination of a witness is reviewed for abuse of discretion, and the ruling will be reversed only if the abuse of discretion suggests a manifestly unreasonable judgment.  See United States v. Hinkle, 37 F.3d 576, 579 (10th Cir. 1994).  Ruling upon the government's motion in limine to restrict cross-examination of Ms. Price, the district court determined that Mr. Little could inquire into her psychiatric treatment so long as he could demonstrate that the treatment both

"related in time" to the events about which she was going to testify and was serious enough so as to be "relevant . . . to [her] ability to accurately perceive conditions." Tr. 309, 310-11. The burden placed on Mr. Little was quite minimal and, we think, a reasonable restriction on his right to impeach Ms. Price through cross-examination, particularly given the very sensitive nature of this line of questioning. Given the broad discretion that the trial court possesses in controlling cross-examination, we conclude that the limitations imposed by the trial court were well within its discretion.

Finally, we turn to Mr. Little's argument that the evidence that the government presented at trial was not sufficient, as a matter of law, to sustain a conviction. In reviewing the sufficiency of the evidence, we will reverse only if we conclude that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Lopez, 100 F.3d 113, 118 (10th Cir. 1996) (quotations omitted). Mr. Little asserts that the evidence presented at trial is insufficient because (1) all evidence was circumstantial; (2) the jury discounted his testimony; and (3) there was no evidence of his racial animus to support the two civil rights violations. We are not persuaded by his argument.

The evidence of Mr. Little's guilt was substantial. The government presented numerous witnesses who corroborated the government's assertions and

accounted for virtually every move Mr. Little made the day of and the two days following the bombing. The government adduced evidence that the pipe bomb that exploded was labeled "KKK" and testimony that directly linked that pipe bomb to Mr. Little. Furthermore, the government presented several witnesses who testified about Mr. Little's hatred for blacks and his desire to kill them. We conclude that there was ample evidence to support the jury's verdict.

The judgment of the district court is AFFIRMED in all respects.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge