

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2004

# USA v. Minerd

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3305

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Minerd" (2004). *2004 Decisions.* Paper 159.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No:  02-3305

UNITED STATES OF AMERICA

v.

JOSEPH P. MINERD,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. No. 99-00215)
District Court: Hon. Maurice B. Cohill, Jr.

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2004

Before: McKEE, Circuit Judge,
and ALDISERT and GREENBERG, Senior Circuit Judges.

(Filed: November 1, 2004)

OPINION

McKEE, Circuit Judge.

Joseph P. Minerd appeals his conviction for maliciously destroying property by

means of fire and explosives.  He contends that the evidence at trial did not satisfy the

interstate commerce element of 18 U.S.C. § 844(i).  Minerd also argues that the

government did not introduce sufficient evidence to convict him of the crime.  For the

reasons that follow, we will affirm.

## I.

Because we write only for the parties, it is not necessary to recite the facts of this case in detail except insofar as maybe helpful to our brief discussion. A jury convicted Minerd of maliciously destroying property by means of fire and explosives in violation of 18 U.S.C. § 844(i). Following a separate sentencing hearing, Minerd was sentenced to life in prison without the possibility of parole. This appeal followed.

## II.

As noted, Minerd raises two issues in this appeal. Each is considered separately.

### A. Interstate Commerce Element of 18 U.S.C. § 844(i).

Minerd argues that there was insufficient evidence to prove that the property in question was used in an activity affecting interstate commerce, as required under 18 U.S.C. § 844(i). That provision makes it a crime to "maliciously damage or destroy, by means of fire or an explosive, any building . . . used in interstate or foreign commerce." 18 U.S.C. § 844(i). The property Minerd destroyed, a rental townhouse unit in an apartment complex, was used by its tenants as a private residence. Minerd claims that the townhouse unit was therefore not a building used in an activity affecting interstate commerce. We disagree.

In *Russell v. United States*, 471 U.S. 858 (1985), the Supreme Court held that section 844(i) could be constitutionally applied to a rented apartment building. In *Russell*, the defendant attempted to set fire to an apartment building that he owned and used as

rental property. In responding to Russell's claim that the federal arson statute did not apply because the apartment building was not used in interstate commerce, the Supreme Court stated, "By its terms . . . [Section 844(i)] only applies to property that is 'used' in an 'activity' that affects commerce. The rental of real estate is unquestionably such an activity." 471 U.S. at 862. We have previously noted that *Russell* establishes that renting real estate is an activity that affects interstate commerce for purposes of Section 844(i). *See United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997).

Minerd fails to explain why *Russell* does not control here. Rather, he argues that under a more recent Supreme Court opinion, *Jones v. United States*, 529 U.S. 848 (2000), property that is used as a private residence falls outside the scope of 18 U.S.C. § 844(i). This argument misconstrues the holding of *Jones*.

In *Jones*, the Supreme Court held that an owner-occupied residence not used for any commercial purpose does not satisfy the "property used in interstate commerce" requirement of section 844(i). 529 U.S. at 859. The defendant in *Jones* threw an explosive device into his cousin's home. His cousin owned and occupied the house as a residential dwelling for everyday family living. *Id.* at 851. The government argued that the cousin's home was property "used in" interstate commerce because it was "used" as collateral for a mortgage from an Oklahoma lender and was "used" to receive natural gas from sources outside Indiana. *Id.* at 855. The Supreme Court disagreed stating that the "use" requirement in Section 844(i) refers to active employment for commercial purposes, and is not satisfied by a passive or past connection to commerce. *Id.*

In deciding *Jones*, the Supreme Court in no way overruled its earlier decision in

*Russell*. Rather, the Supreme Court merely distinguished *Russell* noting that, in *Russell*, the "dispositive fact" was that the defendant was renting his apartment building to tenants at the time the defendant attempted to set fire to the building. 529 U.S. at 853. Moreover, the Supreme Court explicitly stated that *Jones* forced the court to "confront a question that was not before the Court in *Russell*," namely, whether section 844(i) covers property that is occupied and used by its owner "not for any commercial venture, but as a private residence." *Id.* at 854.

Minerd nevertheless argues that because the apartment unit destroyed here was used as a residence, it does not fall within the scope of 18 U.S.C. § 844(i). However, this contention overlooks the fact that the apartment unit here was "used" by its tenants as a private residence, and was also "used" by its owner as a source of rental income. The apartment unit in the instant case was owned by Home Properties of New York, a company that owns approximately 50,000 rental units. App. 909. This unit is therefore factually distinguishable from the building destroyed in *Jones*, a private owner-occupied family residence. The instant unit falls squarely within the ambit of *Russell*. As clearly articulated in *Russell*, the mere fact that the apartment unit was rental property generating rental income is sufficient to bring the property within the reach of 18 U.S.C. § 844(i).

Minerd also makes a related argument in claiming that section 844(i) only applies to rental units when the owner destroys the property for financial gain. Indeed, Minerd correctly points out that several defendants who have been convicted under section 844(i) were allegedly motivated by greed, including the defendant in *Russell*. *E.g. United States v. Parsons*, 993 F.3d 38 (4th Cir. 1993) (affirming conviction of a defendant who

solicited arson of a rental residential property to collect insurance proceeds).  However, 18 U.S.C. § 844(i) merely requires that a defendant act "maliciously."  Minerd's attempt to suggest that the tragic killings in this case were not "malicious" because he was not motivated by financial gain merits little comment.  In several instances, persons have been convicted under the statute even though their crimes were not motivated by financial gain.  *E.g. United States v. Jimenez*, 256 F.3d 330, 334 (5th Cir. 2001) (upholding conviction of defendant who threw an explosive into a residence with a home office in an attempt to retaliate against one of the home's occupants for a recent drive-by shooting).

## B. Sufficiency of Evidence

Minerd next claims that the government failed to introduce sufficient evidence to directly implicate him in the charged offense.  In evaluating whether a jury verdict is based on legally sufficient evidence, we apply a "particularly deferential" standard of review.  *United States v. Dent,* 149 F.3d 180, 187 (3d Cir. 1998), cert. denied, 525 U.S. 1085, 119 S.Ct. 833, 142 L.Ed.2d 689 (1999)).  In applying this standard, our role is not to weigh the evidence or to determine the credibility of witnesses.  *Id.* (internal citations omitted).  Instead, we must view the evidence in the light most favorable to the government.  *Id.* (citing *United States v. Thomas*, 114 F.3d 403 (3d Cir. 1997)).  A finding of insufficiency should be confined to cases where the prosecution's failure is clear.  *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)). We will sustain the verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Dent*, 149 F.3d at 187 (internal citations omitted).  We agree that the evidence here is

entirely circumstantial. It is also entirely compelling.

Deana and Kayla Mitts were killed on January 1, 1999, when a pipe bomb exploded in Deana's apartment. App. 121-22, 1317. Minerd argues that the government presented no physical evidence to link him to the pipe bomb. That argument asks us to turn a blind eye to the evidence against him. At trial, the government presented evidence, including testimony by two expert witnesses, that the pipe used in the pipe bomb had been threaded at Brillhart's Hardware Store. App. 1002-03, 1018-19, 1044. The bomb was a two-inch by eight-inch pipe that included two end caps and one eight-inch long pipe. App. 491, 515. While searching Minerd's residence, the government discovered a receipt from the plumbing department of Brillhart's Hardware Store which reflected the purchase of two unspecified items priced at $3.29 each, and one item priced at $5.59. App. 381, 771-72; S. App. 46. After conducting an inventory of the plumbing department of Brillhart's department store, the government concluded that the store sold eight-inch pieces of pipe, identical to the pipe used in the pipe bomb, for $5.59. App. 773-74; S. App. 46-47. The government also found that Brillhart's sold end caps identical to those used in the pipe bomb for $3.29 each. App. 773-74; S. App. 46-47. Thus, the jury could easily have reasoned that the receipt found in Minerd's home linked him to the sale of the eight-inch pipe bomb and its two end caps. Minerd argues that the receipt is not probative because it could have reflected an innocent purchase of supplies for his home. Indeed it could have, but the jury concluded it didn't. The evidence does not need to be inconsistent with every conclusion save that of guilt. *See Dent*, 149 F.3d at 188. Moreover, that is not the only link that binds Minerd to the fatal fire bomb.

Minerd was a skilled machinist, App. 752, and the government also presented evidence that two of Minerd's neighbors had heard of explosions coming from his property in the months preceding Deana Mitts' death. App. 863-64, 878-80. Lastly, the jury learned that four cans of gunpowder, consistent with the type of gunpowder used in pipe bombs, were found in Minerd's home. App. 533-34, 1129-30.

The government also presented evidence strongly suggesting motive and opportunity for Minerd's actions. Minerd admitted to a police officer that he wanted Deana Mitts to have an abortion and that she had refused. App. 811-12. Minerd told the officer that he believed that Deana Mitts was carrying someone else's child. App. 812. In addition, the government presented evidence that Minerd had repeatedly driven by Deana Mitts' apartment and her parents' home, and had followed her home from church on multiple occasions. App. 559, 591-600. The jury also heard testimony from neighbors who had seen Minerd shove Deana Mitts, as well as testimony from Deana Mitts' mother, who testified that she had seen bruises on Deana's neck. App. 643, 689. Lastly, one of Minerd's co-workers testified that Minerd tried to get a stun gun repaired, commenting that he wanted to shock Deana Mitts into a miscarriage. App. 732-33, 749-50, 757-60.

Minerd's whereabouts were unaccounted for between 2:30 a.m. and 8:40 a.m. on the day that Deana Mitts was killed. App. 1068, 1099. The jury learned that during this time frame, Deana Mitts was staying at her parents' house and that her car was visibly parked at their house. App. 593, 605-606. The jury also learned that Minerd had a key to Deana Mitts' apartment. App. 591, 821. Minerd argues that no eyewitness testimony placed him at Deana Mitts' apartment in the early morning hours before her death. We

agree. There was none, but none was required for a conviction under 18 U.S.C. § 844(i) on this record.

The evidence here was clearly sufficient to support a reasonable inference that Minerd used a pipe bomb to destroy Deana Mitts' apartment, killing Deana and Kayla Mitts in the process. A conviction under 18 U.S.C. § 844(i) requires proof of the following elements: 1) that the defendant used fire or an explosive to damage or destroy property; 2) that the defendant acted maliciously; and 3) that the property was used in or affected interstate commerce. The government must prove each element beyond a reasonable doubt, but may do so by circumstantial evidence. *See Dent*, 149 F.3d at 188 (citing *United States v. Barrow*, 363 F.2d 62, 64 (3d Cir. 1966)). Here, a reasonable jury could readily infer from the aforementioned testimony that Minerd maliciously used an explosive to destroy property.

Section 844(i) does not provide a definition for the term "maliciously." At common law, one acted "maliciously" if he or she acted intentionally or with willful disregard of the likelihood that damage or injury would result. *See United States v. Gullett*, 75 F.3d 941, 947 (4th Cir. 1996) (internal citations omitted). Because Congress did not define the term "maliciously" we must assume that Congress adopted the common law definition of the term. *Gullett*, 75 F.3d at 947 (citing *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952)). Here, a reasonable jury could easily infer from the fact that a pipe bomb was used to destroy Deana Mitts' apartment, that Minerd acted with willful disregard of the likelihood that damage to rental property and/or injury would result if the pipe bomb exploded. Thus, the government produced

sufficient evidence to support its contention that Minerd acted maliciously.

Lastly, as addressed in the previous section, the government presented evidence from which a reasonable jury could infer that the apartment building in the instant case was used in interstate commerce.

We therefore find that the government introduced sufficient evidence to prove its case and to support Minerd's conviction. Minerd's second claim is therefore denied.[*]

III.

Based on the foregoing analysis, we will affirm the conviction of Joseph P. Minerd.

---

[*]In reviewing the evidence here, we cannot help but note the painstakingly meticulous and thorough investigation that forged the evidentiary link to Minerd. As we have noted above, the evidence was circumstantial. That is not surprising given the destructive force of a fire bomb and the difficulty of gathering direct evidence following an explosion and fire. Nevertheless, the patient, careful and thorough investigation that followed gathered sufficient circumstantial evidence to inexorably establish Minerd's guilt beyond a reasonable doubt.