*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0427p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHN T. MARTIN,

           *Petitioner-Appellant,*

    *v.*

EDWARD PEREZ,

           *Respondent-Appellee.*

No. 03-6384

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 01-00037—Henry R. Wilhoit, Jr., District Judge.

Submitted: December 6, 2004

Decided and Filed: December 13, 2004

Before: MARTIN and MOORE, Circuit Judges; BELL, Chief District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Frances E. Catron, UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. John T. Martin, Indianapolis, Indiana, pro se.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant John T. Martin ("Martin") appeals the district court's denial of his § 2241 petition for a writ of habeas corpus. Martin asserts that he is actually innocent of the federal crime of arson as set forth in 18 U.S.C. § 844(i) because the property he bombed lacked a sufficient connection to interstate commerce. In light of the testimony introduced during the district court's evidentiary hearing which indicates that the property damaged by Martin's bomb was a rental property, we **AFFIRM** the district court's denial of Martin's § 2241 petition for a writ of habeas corpus.

---

[*]The Honorable Robert Holmes Bell, Chief District Judge of the United States District Court for the Western District of Michigan, sitting by designation.

1

# I. BACKGROUND[1]

In May 1996, Martin was indicted on charges of arson, possession of an unregistered explosive device, obstruction of justice, and making false statements to federal investigators based on his actions in connection with the detonation of a pipe bomb at a private residence (the "Residence") in Madison, Indiana. Pursuant to a plea agreement, Martin pleaded guilty to the arson and obstruction-of-justice charges, and the government dismissed the possession of an unregistered explosive device and false-statement counts. In December 1996, the U.S. District Court for the Southern District of Indiana sentenced Martin to 108 months' imprisonment, three years' supervised release, and restitution to Carol Horton (the Residence's owner), Horton's insurance company, and Horton's son, James Bowyer ("James"), who had been living at the Residence at time of the bombing.

Relying on the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995), Martin appealed his conviction to the U.S. Court of Appeals for the Seventh Circuit, asserting that his conduct lacked the nexus to interstate commerce necessary to sustain a federal conviction. The Seventh Circuit denied the appeal, concluding that Martin's guilty plea barred a sufficiency-of-the-evidence inquiry and that Martin had stipulated to the interstate-commerce nexus in his plea. *See United States v. Martin*, 147 F.3d 529, 533 (7th Cir. 1998).

In February 1999, Martin filed a motion in the Southern District of Indiana for correction of judgment, which that court treated as Martin's first § 2255 motion for collateral relief. The sole claim asserted in this filing was that Martin had pleaded guilty to a crime he did not commit (i.e., obstruction of justice) because the stipulated facts contained in the plea agreement differed from those in the indictment. The Southern District of Indiana denied relief, concluding that the argument had been procedurally defaulted, that the argument had been waived by Martin's guilty plea, and that the obstruction-of-justice charge could be sustained based on the stipulated facts in the plea agreement. Both the Southern District of Indiana and the Seventh Circuit rejected Martin's request for a certificate of appealability.

During the pendency of his first motion, Martin filed a motion to dismiss the indictment for lack of jurisdiction and an "Administrative Notice" requesting relief from conviction in the Southern District of Indiana. That court classified both filings as § 2255 petitions and dismissed them on the ground that the Seventh Circuit had not granted Martin permission to file a second or successive § 2255 petition. In June 2000, Martin sought leave from the Seventh Circuit to file a second or successive § 2255 petition. The request for leave, citing *Lopez* and the Supreme Court's then-recently published decision in *Jones v. United States*, 529 U.S. 848 (2000), asserted that the Residence lacked a sufficient connection to interstate commerce. After considering this argument, the Seventh Circuit denied Martin's request for leave to file a second or successive § 2255 motion.

In July 2000, Martin filed a "Petition for Writ of Habeas Corpus" in the U.S. District Court for the Eastern District of Kentucky, which had jurisdiction over Martin's place of confinement. The Eastern District of Kentucky construed the filing as a § 2255 motion challenging conviction and transferred the case to the Southern District of Indiana. The Southern District of Indiana then dismissed the motion for failure to obtain permission from the Seventh Circuit to file a second or successive § 2255 motion.

In February 2001, Martin filed a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" in the Eastern District of Kentucky, again raising the interstate-commerce issue. The Eastern District of Kentucky classified the petition as a second or successive § 2255 petition and dismissed the petition without prejudice. Martin appealed to this court, and in *Martin I*, we concluded that Martin's claim fell within § 2255's savings clause and thus could be asserted via a § 2241 habeas corpus petition. *See Martin I*, 319 F.3d at 803-05. We remanded the case to the Eastern District of Kentucky so that an evidentiary hearing

---

[1]A more detailed summary of this case's factual and procedural history is included in this court's opinion in *Martin v. Perez*, 319 F.3d 799, 800-02 (6th Cir. 2003), hereinafter referred to as "*Martin I*."

could be held to determine whether the Residence was a rental property such that Martin could be held criminally liable for its bombing pursuant to 18 U.S.C. § 844(i).

In October 2003, the Eastern District of Kentucky convened an evidentiary hearing as directed by this court. Martin was first called to the stand, but his testimony did not reveal any specific facts bearing on the question of whether the Residence was a rental property. Two witnesses for the government then testified.

Carol Horton first explained that, at the time of the bombing, she and her sister jointly owned the Residence, which had been their mother's home prior to her death. Because her sister lived in New York, Horton had primary responsibility for maintaining the property. After a period of vacancy following Horton's mother's death, the Residence was occupied by Horton's oldest son, James. Horton stated that James paid her $200.00 per month in rent and that he was responsible for maintaining the Residence, although she was financially responsible for repairing the property after the bombing. Horton admitted that she did not issue receipts to James for his rent payments and that she had not listed the rent payments as income on her tax returns, apparently because the rent payments were less than the monthly mortgage payments on the Residence. At some point following the bombing, James moved out of the Residence, and the home was then occupied by James's brother, Edward Bowyer, and his wife. Horton stated that Edward paid $300.00 in monthly rent and that she did list these rent payments on her 1997, 1998, and 1999 tax returns. In 1999, Horton's sister deeded her interest in the Residence to Horton, and Horton sold the property. At no time during her ownership of the Residence did Horton herself live in the home.

The government also called Sharon Jackson, the Assistant United States Attorney who had investigated the bombing and negotiated Martin's plea. Jackson stated that the federal investigators were aware at the time Martin was indicted that the Residence was owned by Horton and occupied by her son James. Jackson then explained that, at the time of the investigation, the Supreme Court's decision in *Jones* had not yet been decided, and Seventh Circuit case law focused on factors other than status as a rental property in determining whether a nexus to interstate commerce existed.

Based on the testimony presented during the evidentiary hearing, the Eastern District of Kentucky ruled that Martin had failed to sustain his burden of proving that the Residence lacked the requisite connection to interstate commerce necessary for conviction under § 844(i). Martin timely appealed to this court.

## II. ANALYSIS

### A. Section 2241 Habeas Corpus Relief

This court has jurisdiction over Martin's appeal from the Eastern District of Kentucky's judgment denying his § 2241 petition for a writ of habeas corpus, *see* 28 U.S.C. § 2253(a), and we review the district court's decision de novo. *Rosales-Garcia v. Holland*, 322 F.3d 386, 400-01 (6th Cir.) (en banc), *cert. denied*, 539 U.S. 941 (2003); *see also United States v. Laton*, 352 F.3d 286, 290 (6th Cir. 2003), *cert. denied*, 124 S. Ct. 2906 (2004) (reviewing de novo the determination of whether property affects interstate commerce because it is a mixed question of law and fact).

Because Martin's petition for a writ of habeas corpus has been classified as a § 2241 petition falling within the scope of § 2255's savings clause, Martin must demonstrate his actual innocence in order to obtain relief. *See Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003) ("The savings clause may only be applied when the petitioner makes a claim of actual innocence.") (citing *Martin I*, 319 F.3d at 804). To establish that he is actually innocent, Martin "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks and citation omitted). When evaluating Martin's claim of actual innocence, we must consider all of the available evidence, including the testimony adduced at the district

court's evidentiary hearing.**2**  *See id.* at 623-24 ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.  In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make.  Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey*.") (citation omitted).

## B.  Section 844(i)'s Interstate Commerce Requirement

Title 18 U.S.C. § 844(i) provides for the imposition of federal criminal sanctions against any person who "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."  We conclude that Martin is not actually innocent of violating § 844(i) because the Residence is a rental property and its bombing satisfies § 844(i)'s requirement that the damaged property be "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."**3**

In *Russell v. United States*, 471 U.S. 858 (1985), the Supreme Court held that the arson of a two-unit apartment building could be prosecuted under § 844(i) because the building was a rental property.  In so holding, the Court noted that, although § 844(i) "only applies to property that is 'used' in an 'activity' that affects commerce," "[t]he rental of real estate is unquestionably such an activity."  *Id.* at 862.  As the Court explained, its determination that rental property satisfied the interstate-commerce requirement did not depend "on the connection between the market for residential units and 'the interstate movement of people'" because "the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties."  *Id.*  The Court also pointed to the statute's legislative history, which "suggests that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home."  *Id.*

According to Martin, the Supreme Court's ruling in *Jones v. United States*, 529 U.S. 848 (2000), nevertheless requires a conclusion in this case that the Residence lacks a sufficient nexus to interstate commerce.  In *Jones*, the Court held that "§ 844(i) does not reach an owner-occupied residence that is not used for any commercial purpose," even if the owner-occupied residence's utilities had interstate connections**4** or the residence's mortgage and insurance contracts involved out-of-state parties.  *Id.* at 852, 855-57.  As the Court explained, § 844(i)'s requirement that the property be used in an activity affecting commerce "is most sensibly read to mean active employment for commercial purposes, and not merely a

---

**2**We note that Martin's indictment does not specify upon what ground the grand jury based its finding of a sufficient interstate-commerce nexus.  Thus, Martin's indictment does not narrow the range of interstate-commerce connections that we may consider in this case.

**3**Martin contends that if § 844(i)'s interstate-commerce requirement is not satisfied, then the Southern District of Indiana lacked the subject matter jurisdiction necessary to convict him.  Such an assertion, however, mischaracterizes § 844(i)'s interstate-commerce requirement.  As we explained in *United States v. Rayborn*, 312 F.3d 229, 231 (6th Cir. 2002), "[a]lthough the interstate commerce requirement is frequently called the 'jurisdictional element,' it is simply one of the essential elements of § 844(i).  It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction."  *See also United States v. Laton*, 352 F.3d 286, 290 (6th Cir. 2003), *cert. denied*, 124 S. Ct. 2906 (2004).

**4**It is true that, at the time Martin was convicted, the government's theory of an interstate-commerce nexus rested on the Residence being served by an interstate-utility company.  Indeed, in the plea agreement, Martin did not stipulate to an interstate-commerce nexus generally, but rather only to the fact that "several utilities connected with the residence . . . were utilities which affected commerce or moved in interstate commerce."  Joint Appendix at Exhibit D (Plea Agreement at 6).  As we noted above, however, Martin's indictment did not specify a particular interstate-commerce-connection theory, and when evaluating a claim of actual innocence, our review is not limited to the record as it existed at the time of conviction.  Thus, the fact that the government is asserting a different basis for establishing a connection to interstate commerce during Martin's § 2241 proceeding does not alter our analysis.

passive, passing, or past connection to commerce." *Id.* at 855.  The *Jones* Court did not purport to overrule *Russell*, however; indeed, the Court distinguished its prior decision by pointing to the "dispositive fact" in *Russell* that the "[p]etitioner was renting his apartment building to tenants at the time he attempted to destroy it by fire." *Id.* at 853 (internal quotation marks and citation omitted).

Based on the evidence presented during the district court's evidentiary hearing, we conclude that the district court did not err in finding that the Residence had a sufficient nexus to interstate commerce to support Martin's § 844(i) conviction.  During the evidentiary hearing, Carol Horton testified that James paid her $200.00 a month in rent, that the Residence was owned in part by her sister who resided in New York, and that Horton herself never occupied the Residence.  Although Horton was unable to produce any corroborating documentation such as rent receipts or tax returns showing that James did in fact pay rent, the burden rests with Martin in this § 2241 proceeding to prove that, based on this evidence, no reasonable juror could find that the Residence constituted rental property.  By failing to present any evidence affirmatively disproving James's payment of rent or showing that Horton did occupy the Residence at the time of the bombing, Martin has failed to carry his burden.

## III.  CONCLUSION

Because the evidence proffered by the government during the district court's evidentiary hearing indicates that the Residence was a rental property, and because Martin did not present any evidence suggesting that the Residence was an owner-occupied private residence, Martin has failed to establish that he is actually innocent of violating 18 U.S.C. § 844(i).  Thus, we **AFFIRM** the district court's judgment denying Martin's § 2241 petition for a writ of habeas corpus.