HOLMES, Circuit Judge,
dissenting, joined by HOLLOWAY, Circuit Judge.
I respectfully dissent. The majority concludes that the term “visual depiction” in 18 U.S.C. §§ 2252, 2252A (2006) refers to the “substantive content” of an image of child pornography. See Maj. Op. at 892-93. I disagree. Under the versions of the statutes applicable here, in my view, the term “visual depiction” refers to a particular item containing an image of child pornography that is received or possessed by a defendant. I agree with the majority that the challenges of the two defendants, Christopher Dayton and Kenneth Sturm, “implicate the Government’s burden of proving the interstate commerce element of the crimes charged.” Maj. Op. at 897. I also agree that proof of that element in part “hinges on the meaning of the term ‘visual depiction’” in §§ 2252 and 2252A. Id. at 897-98. Based on my reading of the statutes, and more specifically the term “visual depiction,” however, I conclude that the government has not carried its burden of proof regarding the interstate-commerce element. Accordingly, I would reverse the convictions of Messrs. Dayton and Sturm.
I.
A.
The majority’s interpretation of the term “visual depiction” cannot withstand serious scrutiny. The majority holds that “visual depiction” means “the substantive content of an image” and not the particular instantiation of an image received, possessed, or distributed by a defendant. Id. at 900. In other words, the majority conceives of a “visual depiction” as an intangible “substance,” the incorporeal “portrayal” of a scene. See id. at 897. But throughout its opinion, the majority cannot help but sneak concepts of physicality and tangibility into its definition.
1.
For example, as the majority rightly notes, see id. at 900, the statutes require a “visual depiction” to be “mailed,” “shipped,” or “transported” in interstate commerce. 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2)(B) (2006). They also require a defendant to “receive!],” “possess!],” or “distribute! ]” a “visual depiction.” See 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2)-(4) (2006). Manifestly, these kinetic concepts — mailing, shipping, transporting, receiving, possessing, and distributing — require some kind of tangible object. In English, we do not speak of transporting an incorporeal “substance” across state lines. When one brings a copy of the U.S. Code from Oklahoma to Colorado, one does not transport “the law.” When a Kansas suitor sends a Valentine’s Day card to his Utah sweetheart, we do not say that he mailed his “undying love” in interstate commerce. In the same way, if §§ 2252 and 2252A require a “visual depiction” to be “transported,” “possessed],” etc. by a defendant, then “visual depiction” must refer to a tangible something rather than to some ethereal “content.”
The majority finds support for its reading in 18 U.S.C. § 2252(a)(1)(B) (2006), which requires that a “visual depiction” be “of such conduct ” (emphasis added)— that is, of sexually explicit conduct by a minor. See also 18 U.S.C. §§ 2252(a)(2)(B), (3)(B)(ii), (4)(B)(ii) (2006) *903 (identical phrasing). Says the majority, “Only the substance of an image can be ‘of such conduct.’” Maj. Op. at 900. I could not disagree more. Indeed, the majority has it precisely backwards. It is the conduct portrayed in an image that is its offensive substance. A visual depiction “of” such conduct refers to a particular instantiation of that substantive content — viz., a particular image portraying that conduct.
An easy example defeats the majority’s strained interpretation. Imagine two identical photographs of the Eiffel Tower, one an original and the other a copy. Each would be described as a photo or “visual depiction” of the Eiffel Tower. What is the substantive content here? Obviously, the Eiffel Tower — the subject of the photo, not the photo itself. Each of the photos is a separate and distinct “visual depiction” o/the same substantive content. And of course, if I were to say that I had “mailed” or “transported” one of these visual depictions in interstate commerce, everyone (except perhaps the majority) would understand that to mean that I had mailed or transported a particular photo. No one would say, for example, that I had mailed “the Eiffel Tower.”
2.
Nowhere is the tangible character of a “visual depiction” more on display than in the affirmative defense set forth in 18 U.S.C. § 2252(c) (2006),[1] which is available to a defendant if he can show that he:
(1) possessed less than three matters containing any visual depiction proscribed by [18 U.S.C. § 2252(a)(4) (2006)]; and
(2) promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any visual depiction or copy thereof—
(A) took reasonable steps to destroy each such visual depiction; or
(B) reported the matter to a law enforcement agency and afforded that agency access to each such visual depiction.
If it is true, as the majority posits, that “visual depiction” means “substantive content of [an] image,” Maj. Op. at 900, I am at a loss to understand how the low-level possessor of child pornography, for whom this defense was intended, could take advantage of it. How is such a defendant to. “destroy” the “substantive content” of a pornographic image? It would not be enough to destroy his particular images because the “substantive content” would live on in the (likely) thousands of identical images possessed by others. And the majority cannot seriously contend (although, unfortunately, it attempts to do so, see id. at 901) that destruction of one particular image out of possibly thousands constitutes “reasonable steps” toward the eradication of the content of that image.
The majority explains away this anomaly by noting that “the term visual depiction is modified by the word ‘such,’ which is a reference to the visual depictions possessed by the defendant.” Id. at 901. Well, of course that is true. The affirmative defense is most definitely concerned with the “visual depictions possessed by the defendant.” Id. How else could he destroy, or take reasonable steps to destroy, those visual depictions?
The majority misses the point, though. The operative word here is not “such,” which does little more than refer back to the same “visual depiction” previously referenced in the section. See Webster’s Third New International Dictionary 2283 *904 (1981) (defining “such” to mean “having a quality already or just specified — used to avoid repetition of a descriptive term”). Rather, the operative word is “each.” The word “each” denotes a particular thing. See id. at 713 (defining “each” to mean “being one of two or more distinct individuals” (emphasis added)). The majority does not explain how “each” can possibly modify a word denoting only a nebulous “substance.” Under the majority’s reading, a defendant is required to “destroy each such [substantive content of an image].” See 18 U.S.C. § 2252(c)(2)(A) (2006). “[E]aeh ... content”? I daresay, that adjective and noun combination has yet to be uttered in our mother tongue. It is no less anomalous than “each pornography.”
Naturally, the majority recognizes this difficulty, so it equivocates. In explaining how its interpretation squares with the language of the affirmative-defense section, it shifts to employing the term “visual depiction” the way that I do (and the way that I believe Congress intended) — as a particular tangible item. Thus, the majority makes reference to “the visual depictions possessed by the defendant” and “the one or two visual depictions [the defendant] is alleged to possess.” Maj. Op. at 901.
By vacillating between “visual depiction” as incorporeal substance and “visual depiction” as a particular tangible, possess-able thing, the majority is trying to have its cake and eat it too. We are obliged not to interpret statutes that way. See Sullivan v. Stroop, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (“[It is a] normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.” (quoting Sorenson v. Sec’y of Treasury, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986)) (internal quotation marks omitted)).
B.
There is an additional reason that the majority’s interpretation of the term “visual depiction” simply cannot be right. By allowing the jurisdictional nexus of § 2252(a)(2) or § 2252A(a)(2)(B) to be satisfied with a showing that the “substantive content” of an image crossed state lines “in some form at some point in time,” Maj. Op. at 897, the majority expands the statute’s compass to the full extent of Congress’s Commerce Clause authority. The problem? Congress clearly did not flex all of its Commerce Clause muscle in this statute.
When Congress intends to exercise the full breadth of its power under the Commerce Clause, it uses particular language to do so. As the Supreme Court has said, “Congress is aware of the distinction between legislation limited to activities ‘in commerce’ and an assertion of its full Commerce Clause power so as to cover all activity substantially affecting interstate commerce.” Russell v. United States, 471 U.S. 858, 859 n. 4, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) (quoting United States v. Am. Bldg. Maint. Indus., 422 U.S. 271, 280, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975)) (some internal quotation marks omitted). Thus, the Court has construed the statutory phrase “engaged in commerce” as “a term of art, indicating a limited assertion of federal jurisdiction.” Am. Bldg., 422 U.S. at 280, 95 S.Ct. 2150. And it has instructed us that the phrase “used in commerce” “is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce.” Jones v. United States, 529 U.S. 848, 855, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) (emphasis added).
*905 By contrast, when the phrase “affecting commerce” appears in a federal statute, it “indicates Congress’[s] intent to regulate to the outer limits of its authority under the Commerce Clause.” Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); see also Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (holding that the phrase “involving commerce” is functionally equivalent to “affecting commerce” and signals Congress’s intent to regulate to the full extent of its Commerce Clause power). These principles are well-ingrained. When we ignore them, we impose “[a] variable standard for interpreting common, jurisdictional phrases,” bring “instability to statutory interpretation,” and send conflicting signals to Congress. Circuit City, 532 U.S. at 117, 121 S.Ct. 1302.
The provisions of §§ 2252 and 2252A in force at the time of the defendants’ convictions employ the phrase “in interstate ... commerce.” For example, § 2252(a)(2) criminalizes the knowing receipt or distribution of “any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce.” 18 U.S.C. § 2252(a)(2) (2006). Similarly, § 2252A(a)(5) criminalizes the knowing possession of material “that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce.” 18 U.S.C. § 2252A(a)(5)(B) (2006). Because the statutes use the phrase “in ... commerce,” we are bound to construe them as “limited assertion[s] of federal jurisdiction.” Am. Bldg., 422 U.S. at 280, 95 S.Ct. 2150.
By way of contrast, §§ 2252 and 2252A have since been amended by the Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, 122 Stat. 4001 (2008). Section 2252(a)(2) now criminalizes the knowing receipt or distribution of “any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce.” 18 U.S.C. § 2252(a)(2) (Supp. Ill 2009) (emphases added). And § 2252A(a)(5) now criminalizes the knowing possession of material “that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce.” Id. § 2252A(a)(5)(B) (emphases added). Under firmly established interpretive principles, these phrases — and particularly the phrase “affecting ... commerce” — signal “Congresses] intent to regulate to the outer limits of its authority under the Commerce Clause.” Circuit City, 532 U.S. at 115, 121 S.Ct. 1302; accord United States v. Wright, 625 F.3d 583, 600 (9th Cir.2010) (“Congress chose to regulate to the outer limits of its Commerce Clause authority by inserting the ‘affecting interstate commerce’ language [into §§ 2252 and 2252A].”); United States v. Lewis, 554 F.3d 208, 216 (1st Cir.2009) (“Congress ... amended the child pornography statutes ... to expand the jurisdictional coverage. It did so by replacing all instances of ‘in interstate’ with ‘in or affecting interstate’ commerce.”).
If the previous versions of §§ 2252 and 2252A (the versions applicable here) have a more restrictive jurisdictional reach than the newly amended versions under our well-settled understanding of the statutory terms used therein, it follows that any interpretation that pushes the previous versions to the outer reaches of the Commerce Clause power must necessarily be wrong. The majority’s interpretation of the statutes does just that. Despite the drastic and jurisdictionally significant differences in language between the earlier and later versions of the statutes, the ma *906 jority’s construction renders them identical.
The majority does not take a front-door approach in effecting this judicial alchemy. That is, it does not purport to expand the scope of the phrase “in interstate ... commerce” to cover any activity connected in some fashion to interstate commerce. Such an endeavor would not be tenable, and the majority wisely does not attempt it. See Jones, 529 U.S. at 855, 120 S.Ct. 1904 (stating that the phrase “used in commerce” “is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce”); Wright, 625 F.3d at 592 n. 7 (“Congress settled on the ‘in interstate commerce’ language [in the previous version of § 2252A] precisely because of its limited reach.”).
Rather, the majority’s expansion of federal jurisdiction comes in through the back door, via its rendering of the term “visual depiction.” By allowing that term to encompass the “substance” of an image and by allowing the jurisdictional nexus to be satisfied by a showing that the “substance” — though not the particular image possessed by a defendant — crossed state lines “at some point in time,” Maj. Op. at 897, the majority effectively transforms the statute’s “in commerce” requirement into an “in or affecting commerce” requirement. Thus, even if a defendant acquires his particular image through a purely intrastate transaction, the fact that some prior iteration of the image traveled in interstate commerce (in a past transaction having no connection to the defendant) will render him subject to federal prosecution. I find this impossible to square with the Supreme Court’s admonition that a “past connection to commerce” is insufficient to satisfy an “in commerce” jurisdictional requirement. See Jones, 529 U.S. at 855, 120 S.Ct. 1904; see also Wright, 625 F.3d at 594-96 (noting that “criminal statutes punishing the transmission of the relevant material ‘in interstate or foreign commerce’ require the material itself to cross state lines,” and “rejecting] the government’s view that [a defendant’s] entirely intrastate acts satisfy the statute’s interstate commerce requirement solely because of prior interstate activity” (emphases added)).
The majority confronts neither the applicable statutes’ requirement that a visual depiction be transported “in interstate ... commerce,” 18 U.S.C. §§ 2252(a)(2), 2252A(a)(5)(B) (2006), nor the fact that this language has since been amended — and expanded — to read “in or affecting interstate ... commerce,” 18 U.S.C. §§ 2252(a)(2), 2252A(a)(5)(B) (Supp. III 2009) (emphasis added); see Wright, 625 F.3d at 600 (holding that the amendments “effected a substantial change in section 2252A(a)(1)”); Lems, 554 F.3d at 216 (holding that the amendments “expanded] the jurisdictional coverage”).
Indeed, the majority’s construction of the jurisdictional-nexus requirement makes the subsequent amendment superfluous. If the majority’s interpretation is right, Congress would have found no need to expand federal jurisdiction. There is good reason, therefore, to reject the majority’s reading of the statutes. See Milner v. Dep’t of Navy, —U.S.-, 131 S.Ct. 1259, 1268, 179 L.Ed.2d 268 (2011) (declining to entertain an interpretation that would render a statutory provision superfluous and thus make irrelevant the subsequent amendment of that provision); see also TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (“It is ‘a cardinal principle of statutory construction’ that ‘a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignif *907 icant.’ ” (quoting Duncan v. Walker, 583 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001))).
C.
The majority’s rejection of the defendants’ argument rests on a false premise. The defendants argue, and I agree, that the particular thing received, possessed, or distributed by a defendant, be it a digital file or a tangible photograph, must have crossed state lines.[2] The majority castigates this approach, saying that it “would not extend to conduct involving the receipt or distribution of any image other than the original image.” Maj. Op. 898. Thus, the majority reasons, under the defendants’ and my reading, the statutes do not reach copies of an original image “[ejven though the substantive content of [the] copy would be identical to that of the original.” Id.
Respectfully, the majority is operating under a misconception. No one has ever suggested that the statutes’ reach is limited to first-generation images and does not extend to copies thereof. Nor is that the practical effect of my interpretation of the statutes in question. Sections 2252 and 2252A most certainly do cover copies, provided that a particular copy crossed state lines to reach the defendant.
This may be easily illustrated. Imagine that D in North Dakota takes a photo of a minor engaged in sexually explicit conduct using a Polaroid instant camera. He mails that photo (the original) to U in Utah. U wants to keep the original and send a copy to friend, so he creates a copy using a Xerox machine. He mails the copy to M in Maryland. M has received and is now in possession of a visual depiction of a minor engaged in sexually explicit conduct, and the particular visual depiction he possesses — the copy he received from U — was “transported in interstate ... commerce.” 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2)(B) (2006). M is subject to federal prosecution. (So also, for that matter, are D and U.)[3] My reading of the statutes is therefore entirely consistent with Congress’s intent, highlighted in the majority opinion, see Maj. Op. at 898-900, to reach not only the upstream creators of original pornographic images but also the downstream disseminators and consumers of copies.
II.
A couple of final remarks. First, I recognize both that child pornography is despicable and that federal law can constitutionally — and now does statutorily — reach most intrastate transfers of such images. That said, we are called upon to interpret *908 the laws as they are written, not as we would like them to be. Thus, the argument that my interpretation of the statutes here “hamper[s] the prosecution of child pornography cases in this circuit,” United States v. Dayton, 426 Fed.Appx. 582, 606 n. 9 (10th Cir.2011) (Briscoe, J., dissenting), opinion vacated by -Fed.Appx.-, No. 09-1386, 2011 WL 6261657 (10th Cir. Apr. 4, 2011), seems to me to be not only completely irrelevant but also misguided. Congress used specific jurisdictional language in 18 U.S.C. §§ 2252, 2252A (2006) that signals to me — though not apparently to my colleagues in the majority — that the statutes do not reach as far as they are constitutionally able. If there is any “hampering” here, it is Congress’s doing — and, I would add, its intentional doing. See Wright, 625 F.3d at 600 (“The legislative history makes clear that Congress settled on the ‘in interstate commerce’ language because of its limited scope and squarely rejected an earlier proposed bill that would have reached conduct ‘affecting interstate commerce.’ By contrast, in 2007 Congress chose to regulate to the outer limits of its Commerce Clause authority by inserting the ‘affecting interstate commerce’ language.”).
The majority’s holding today serves to federalize an area of criminal prosecution that the applicable statutes deliberately left to the States. See id. at 592 n. 7. Perhaps one might reasonably suggest that this a “just” result. However, the ends of justice cannot excuse our transgressing the rule of law.
Second, whatever one thinks of the majority opinion, it cannot seriously be maintained that it is not a sea change in the law governing federal child-pornography prosecutions. Allowing the government to satisfy the jurisdictional nexus in 18 U.S.C. §§ 2252, 2252A (2006) by showing that the “substantive content” of an image crossed state lines “in some form at some point in time,” see Maj. Op. at 897, both washes away our prior precedent, see United States v. Schaefer, 501 F.3d 1197 (10th Cir.2007); United States v. Wilson, 182 F.3d 737 (10th Cir.1999), and is unique among our sister circuits, cf. Wright, 625 F.3d 583; Lewis, 554 F.3d 208. The defendants here could not have been on notice that such a rule would apply to their cases and, consequently, had no opportunity to defend against it. In fact, Mr. Sturm stipulated to the fact that the originals of the images he possessed were produced out of state. See Maj. Op. at 896 n.4. Under the majority’s new rule, Mr. Sturm effectively stipulated to the jurisdictional nexus — an element of his conviction that he vigorously contested at trial, before his appellate panel, and in this en banc proceeding. Little could Mr. Sturm have known that his stipulation would be the death knell for his case. The majority’s new rule, based on what I believe is an idiosyncratic and erroneous reading of the term “visual depiction,” thus becomes a trap for the unwary in this case. I cannot help but be reminded of “Caligula’s practice of printing the laws in small print and placing them so high on a wall that the ordinary man did not receive fair warning.” Huddleston v. United States, 415 U.S. 814, 834 n. *, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) (Douglas, J., dissenting).
At the very least, the rule of lenity would counsel a narrower interpretation of the term “visual depiction” — one that would not have the effect of altering “the federal-state balance in the prosecution of crimes.” Cleveland v. United States, 531 U.S. 12, 25, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (quoting Jones, 529 U.S. at 858, 120 S.Ct. 1904) (internal quotation marks omitted); see also United States v. Enmons, 410 U.S. 396, 411, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973) (rejecting an interpre *909 tation of the Hobbs Act that would work “an unprecedented incursion into the criminal jurisdiction of the States”); Note, The New Rule of Lenity, 119 Harv. L. Rev. 2420, 2430 (2006) (“When a broad interpretation of an ambiguous criminal statute would expand the scope of federal criminal law into areas traditionally left to the states, ... the rule of lenity require[s] that the [c]ourt adopt the narrower reading.”).
For all of these reasons, I respectfully dissent.

. A substantially identical affirmative defense appears in 18 U.S.C. § 2252A(d) (2006).

. As suggested supra, this is a consequence, I believe, of the statutes’ requirement that a visual depiction be "transported in interstate or foreign commerce,” 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2)(B) (2006) (emphasis added), as opposed, for example, to “in or affecting interstate or foreign commerce.” Compare Circuit City, 532 U.S. at 115-16, 121 S.Ct. 1302, with Russell, 471 U.S. at 859, 105 S.Ct. 2455.

. In the digital context, the example is even more salient. Imagine that D in North Dakota takes the photo using a digital camera, then transfers the digital file to a shared-access folder on his laptop’s hard drive, making that file available for download by others. U in Utah downloads the file to his computer. Of course, the actual file on D’s laptop is not transferred. Rather, D’s computer sends a copy of the information contained in the file to U’s computer, and U’s computer creates its own (identical) file out of that information. U has received and is now in possession of a visual depiction of a minor engaged in sexually explicit conduct, and the particular visual depiction he possesses — the file created from information he received from D — was “transported in interstate ... commerce.” 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2)(B) (2006). U is subject to federal prosecution. (So, too, is D.)